# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| MARTIN RAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:21-cv-818-AGF |
| ) | |
| DR. JOHN WILLIAMS and CORIZON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon review of an amended complaint filed by plaintiff Martin Ray, a prisoner who is proceeding *pro se* and *in forma pauperis*. For the reasons discussed below, the Court will dismiss this action at this time, without prejudice.

## Background

At present, plaintiff is incarcerated at the Moberly Correctional Center. His claims arise from events that occurred while he was incarcerated at the Missouri Eastern Correctional Center ("MECC"). The instant action is one of two prisoner civil rights actions plaintiff has recently commenced in this Court to assert claims related to allegedly inadequate medical care received while incarcerated at the MECC.

Briefly, in *Ray v. MECC, et al.,* No. 4:21-CV-840-JAR (E.D. Mo. Sept. 28, 2021), plaintiff filed a complaint against Corizon and the MECC to claim he was wrongfully denied medical care that was recommended by different Corizon doctors in 2018 and 2020. On September 28, 2021, the Court dismissed the action pursuant to 28 U.S.C. § 1915(e)(2)(B). In so doing, the Court determined, *inter alia*, that the MECC was not suable under § 1983, and the complaint failed to state a claim upon which relief may be granted against Corizon because it

failed to allege that a Corizon custom, policy or practice caused a violation of his constitutional rights.

Plaintiff initiated the instant action by filing a civil rights complaint against Corizon and Dr. John Williams, who was employed by Corizon to work at the MECC. Plaintiff sought and was granted leave to proceed *in forma pauperis*, and the Court reviewed the complaint pursuant to 28 U.S.C. § 1915(e)(2). Upon such review, the Court determined that plaintiff's allegations failed to state a claim upon which relief may be granted against Corizon because there were no allegations that a Corizon policy, custom or official action caused an actionable injury. The Court also noted that plaintiff's claims against Dr. Williams in his official capacity were the equivalent of claims against Corizon and thus failed for that reason. Finally, the Court determined that the complaint failed to state a plausible Eighth Amendment claim against Dr. Williams in his individual capacity because plaintiff failed to allege facts establishing that Dr. Williams actually knew of and deliberately disregarded plaintiff's serious medical need.

The Court gave plaintiff the opportunity to file an amended complaint to clearly set forth his claims. In so doing, the Court explained why the complaint was subject to dismissal and gave Plaintiff clear instructions about how to prepare the amended complaint. Plaintiff has now filed an amended complaint, which the Court reviews pursuant to 28 U.S.C. § 1915(e)(2).

**Legal Standard on Initial Review**

This Court is required to review a complaint filed *in forma pauperis* and must dismiss it if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

**The Amended Complaint**

Plaintiff filed the amended complaint against Corizon and Dr. Williams. Plaintiff specifies that he sues Dr. Williams in his official capacity only. Plaintiff seeks monetary relief to compensate him for allegedly inadequate medical care he received while incarcerated at MECC. Specifically, plaintiff claims "the defendants have demonstrated deliberate indiffer[e]nce to a serious document[ed] medical need. Which is cruel and unusual punishment, under the 8th Amendment." (ECF No. 8 at 3). In support, plaintiff alleges as follows.

Prior to plaintiff's arrival at the MECC, he was diagnosed with spinal stenosis. The "diagnosis was accompanied by a recommended treatment plan from Doctors in the employ of Corizon LLC Dr. Pryor at O.C.C. and Dr. Garcia at F.R.D.C. as well as N[eu]rosurgeon Dr. Mesfin." *Id.* at 3-4. Plaintiff then sets forth his statement of claim as follows:

> Upon my arrival at MECC under the care of Doctor John Williams, M.D. who in his official capacity, refused to provide recommended and appropriate treatment to my condition beyond the prescription of over the counter pain medication. Dr. Williams deliberately ignored my pain and suffering, as well as the interfer[e]nce with normal daily function caused by my condition[.] Additionally Dr. Williams refused to renew my no work lay-in order that had been in place for almost 4 months. Causing further aggravation of my condition.
>
> This constitutes an irreparable harm as Corizon LLC and Dr. John William[s] are no longer responsible for my health care and cannot correct their wrongdoing.

*Id.* at 4. Plaintiff identifies his injuries as follows:

> I have been denied recommended treatment of Epidural Ster[oi]d Injection and facet blocks. I am as well a candidate for L4-5 & L5-S1 decompression and stabilization.

*Id.* Plaintiff does not specify who denied epidural steroid injection or facet blocks. Assuming it was Dr. Williams, plaintiff does not specify when the denials occurred. Plaintiff also fails to specify which doctor recommended epidural steroid injections or facet blocks and when, and he fails to explain why he believes he is a surgical candidate.

4

Plaintiff avers he grieved the matter using the prison grievance procedure, and he attached copies of the grievance materials to the amended complaint. In Informal Resolution Requests ("IRRs") filed in December of 2020, plaintiff complained he was soiling his underwear and Dr. Pryor ordered an MRI; he stated Corizon denied Dr. Garcia's requests for plaintiff to see a specialist and/or a neurosurgeon; and he claimed Dr. Williams "had an agenda to assure me I would be getting no consideration for my spinal stenosis that I was miraculously healed and showed no signs." (ECF No. 8-1 at 2, 4).

Plaintiff provided copies of the IRR responses he received, both dated December 16, 2020. One indicates that plaintiff was seen by a neurosurgery specialist in Columbia, Missouri on June 15, 2018, and an MRI revealed moderate spinal stenosis. It further indicates that conservative treatment was recommended before surgery would be considered, and plaintiff began physical therapy. Examination on September 29, 2020 was within normal limits, and plaintiff had full range of motion and symmetrical weight bearing. Plaintiff annotated this document with his statement that his medical condition was not being addressed. He acknowledged physical therapy was recommended, but then averred that "Dr. Garcia pled my case for surgery" but Dr. Williams said he did not need it. *Id.* at 1.

The other IRR Response addressed plaintiff's complaint of untreated fecal incontinence. It indicates that plaintiff was sent to Mercy to have a nerve conduction study, and that the results were within normal limits, with no evidence of spinal pathology that would cause plaintiff's symptoms. Plaintiff annotated the response with his statement that his problems had persisted for ten years, that Dr. Williams had taken away his Depends, and it was "absurd to say that spinal pathology is not responsible, as evidenced by every other doctors test." *Id.* at 3.

5

Plaintiff continued to use the prison grievance procedure through the grievance appeal stage, and he provided copies of the responses he received. He complained that he needed surgery and steroid injections. He did not clearly identify a particular form of treatment that was recommended by a particular doctor at a particular time. The responses to plaintiff's complaints indicate that plaintiff had received regular medical evaluation for his back complaints and was continuing to receive ongoing medical care. A grievance appeal response dated January 19, 2021 noted plaintiff's complaint that he believed he needed surgery on his back, and found that plaintiff was being seen for medical care and was being followed in chronic care clinics, and the facility physician had evaluated him and reviewed his past MRI, EMG, and physical therapy reports and opined that his current condition did not warrant specialist intervention.

Plaintiff also provides a narrative in which he states that Drs. Garcia and Pryor, "after exam of MRI and my physical condition," recommended that plaintiff immediately have surgery, "which of course Corizon denied." *Id.* at 12. Plaintiff provides no factual detail concerning the recommendations or the denial, and does not state when they occurred. Plaintiff then levels general accusations and insults at Dr. Williams. For example, he states that Dr. Williams "is no Doctor" and provides poor care to inmates, and has a "cancer of apathy" that impacts everyone. *Id.* at 12. Plaintiff states he wants to have treatment other than what Dr. Williams is providing, including steroid injections, facet blocks, and surgery. He also writes: "I am requesting that we start with the aforementioned procedures. Per Dr. Messfin." *Id.* at 13. It is unclear what "aforementioned procedures" are attributable to Dr. Messfin. Plaintiff also states he wants an "outside second opinion of both n[eu]rosurgeon and n[eu]rologist and an updated MRI." *Id.*

6

**Discussion**

The amended complaint fails to state a claim upon which relief may be granted against Corizon or Dr. Williams in his official capacity. As set forth in this Court's earlier Memorandum and Order, to state a § 1983 claim against Corizon, plaintiff must show that there was a Corizon "policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). The amended complaint, like the original, contains no allegations that a Corizon policy, custom, or official action caused an actionable injury. It therefore fails to state a claim upon which relief may be granted against Corizon.

As also set forth in this Court's earlier order, a suit against Dr. Williams in his official capacity is the equivalent of a suit against Corizon. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). To state a plausible claim against Dr. Williams in his official capacity, plaintiff must allege that a Corizon policy, custom, or official action inflicted an actionable injury. *See Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 690-91 (1978). As noted above, the amended complaint contains no such allegations. It therefore fails to state a claim against Dr. Williams in his official capacity.

Even if plaintiff had sued Dr. Williams in his individual capacity, the amended complaint would not state a plausible Eighth Amendment claim against him. To establish that a denial of medical care rises to the level of an Eighth Amendment violation, a plaintiff must plead facts that show the defendant acted with deliberate indifference. *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). The test for deliberate indifference consists of two prongs. *Id.* To establish the first prong, a plaintiff must show that he suffered from an objectively "serious medical need." *Id.* A "serious medical need" is "one that has been diagnosed by a physician as requiring

7

treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (internal citation omitted). To establish the second prong, a plaintiff must show that the defendant actually knew of, and yet deliberately disregarded, his serious medical need. *Schaub*, 638 F.3d at 914.

Deliberate disregard is a mental state "equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposely causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Id.* at 914–15 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 839–40 (1994)). The plaintiff must show that the defendant disregarded a known risk to his health. Allegations amounting to medical malpractice or negligence, and allegations that establish only the plaintiff's disagreement with treatment decisions, do not state claims of constitutional significance. *Id. See Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (a showing of deliberate indifference requires more than a mere disagreement with treatment decisions, and is greater than gross negligence).

Here, the Court will presume that plaintiff has established the objective prong: that he suffered from an objectively serious medical need.  However, plaintiff's allegations are insufficient to establish the subjective prong: that Dr. Williams actually knew of, and yet deliberately disregarded, that need. As noted above, this is an onerous standard that requires plaintiff to demonstrate that Dr. Williams's mental state was akin to criminal recklessness.

Plaintiff can be understood to claim that Dr. Williams is liable to him because he failed to implement various forms of treatment that plaintiff says other doctors recommended. Indeed, "[w]hen an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow." *Dadd v. Anoka Cty.*, 827 F.3d 749, 756–57 (8th Cir. 2016). Here, however, plaintiff alleges no facts permitting the inference that a doctor

8

actually recommended a particular form of treatment that Dr. Williams refused to allow plaintiff to have. Instead, plaintiff references various forms of treatment that were apparently discussed with him in 2018 and/or 2020 and concludes that Dr. Williams's failure to implement treatment other than what he is already providing amounts to deliberate indifference. Plaintiff's allegations establish his disappointment with the care Dr. Williams is providing, his disagreement with Dr. Williams's approach, and his belief he would receive better care elsewhere, or, at most, Dr. Williams's negligence. Such allegations do not state claims of constitutional significance. *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (a "mere disagreement with treatment decisions does not rise to the level of a constitutional violation"); *Estelle*, 429 U.S at 106 (medical malpractice does not amount to a claim of constitutional dimension "merely because the victim is a prisoner."). Additionally, while not alone dispositive, the materials plaintiff provided with the amended complaint show that he has been provided with consistent medical care, that MRI revealed moderate findings and non-surgical treatment was recommended, and that a nerve conduction study showed no evidence of spinal pathology that would cause plaintiff's symptoms.

Plaintiff also claims Dr. Williams is liable to him because he prescribed only over-the-counter medicine. However, a prisoner's disagreement with a doctor's decision to offer over-the-counter medication instead of prescription medication does not constitute deliberate indifference. *See Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). Plaintiff also claims Dr. Williams wrongfully failed to renew a work restriction that had been in place for almost four months. However, plaintiff does not allege the most basic of facts, such as what work he was required to perform and how it affected his condition. Without a factual underpinning, plaintiff's allegations

amount to legal conclusions that are not entitled to the presumption of truth. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

For the foregoing reasons, the Court concludes that the amended complaint fails to state a claim upon which relief may be granted against Corizon and Dr. Williams in his official capacity. The Court further concludes that, even if plaintiff had sued Dr. Williams in his individual capacity, the amended complaint would not state a plausible Eighth Amendment claim against him. This does not appear to be the result of a pleading deficiency. Instead, it is clear that the claims plaintiff wishes to bring are simply not plausible or viable under 42 U.S.C. § 1983. The Court believes it would be futile to permit plaintiff a second opportunity to file an amended pleading, and will dismiss this action at this time, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice. A separate order of dismissal will be entered herewith.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 20th day of April 2022.

_____<br>
AUDREY G. FLEISSIG<br>
UNITED STATES DISTRICT JUDGE